IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| John Francis Medaglia, III, | ) | C/A No.: 1:24-532-MGL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND |
| Shawn Middleton and City of New Ellenton, | ) | RECOMMENDATION |
| | ) | |
| Defendants. | ) | |
| | ) | |

John Francis Medaglia, III ("Plaintiff"), proceeding pro se, alleges that on September 22, 2023, he was wrongfully arrested while exercising his Constitutional rights at City Hall, in New Ellenton, Aiken County, South Carolina, by taking recordings in the building lobby. Plaintiff sues Shawn Middleton ("Middleton"), former chief of police in New Ellenton, and the City of New Ellenton ("the City").[1]

Plaintiff filed this case on February 1, 2024, asserting his First Amendment rights have been violated and a claim for false imprisonment arising under South Carolina law. [*See* ECF No. 33 at 2 n.2].[2]

---

[1] Middleton, who arrested Plaintiff, has not made an appearance in this case. The City has submitted evidence that Middleton resigned as chief of police within a few days after the September 22, 2023 incident, but for reasons unrelated to the encounter with Plaintiff. [ECF No. 54-4 at 2].

[2] Plaintiff also previously asserted claims against the City for violation of his Fourth Amendment rights, for intentional infliction of emotional distress under South Carolina law, and for violation of S.C. Code Ann. § 16-3-910. The

This matter is before the court on the City's motion for summary judgment. [ECF No. 54]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the dismissal procedures and the possible consequences if he failed to respond adequately to the City's motion. [ECF No. 56]. Having been briefed [ECF Nos. 60, 61], the motion is ripe for disposition. Also pending before the court are Plaintiff's motions for summary judgment [ECF Nos. 39, 60] and motion for leave to reserve the lawsuit. [ECF No. 53].

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this matter has been referred to the undersigned for all pretrial proceedings. After carefully considering the record, the undersigned recommends the district judge grant the City's motion for summary judgment, deny Plaintiff's motions for summary judgment, and deny Plaintiff's motion for leave to reserve the lawsuit.

---

undersigned issued a report and recommendation ("R&R") on June 20, 2024, recommending the district judge dismiss these claims. [ECF No. 33]. The R&R remains pending. In the same R&R, the undersigned also granted Plaintiff's motion to amend his complaint. *See id.* In response, the City filed a second motion to dismiss that is now ripe, "preserving its assertion that, to the extent the [R&R] recommends partial dismissal of certain claims, those same claims should be dismissed from the Amended Complaint." [ECF No. 41 at 1]. For the reasons previously articulated in the R&R, the undersigned recommends the district judge dismiss Plaintiff's claims against the City for violation of his Fourth Amendment rights, for intentional infliction of emotional distress under South Carolina law, and for violation of S.C. Code Ann. § 16-3-910. [ECF No. 41, *see also* ECF No. 33].

I.      Factual and Procedural Background

Plaintiff alleges in his unverified amended complaint as follows:

On 9-22-23, around 1 pm, I was recording in the public areas of the city hall and was subsequently arrested by the defendant for expressing my first amendment rights and forcefully took my belongings after doing so injuring my ribs in the process[.]

I ask the court grant $500,000 in punitive damages for my broken tripod and being forcefully detained 3 separate times and wrongful imprisonment and for violations of my first and fourth amendment and intentional infliction of emotion distress.

Additionally, I propose to further amend the complaint by adding factual allegations regarding the presence of a no cell phone sign outside the reception desk in the lobby of the Town Hall, which is unconstitutional on its face. These additional facts are relevant to demonstrating the violation of my constitutional rights as alleged in the complaint.

Furthermore, I propose to amend the complaint to include an additional factual allegation that I was arrested for disorderly conduct for swearing, which is a constitutionally protected activity. This amendment is necessary to fully articulate the violation of my First Amendment rights as part of the claims asserted in the complaint.

Moreover, I propose to amend the complaint to include a further factual allegation that the defendant expressed to me that the lobby of the town hall was a restricted area and there was a no recording policy within that part of the building. This amendment is relevant to establishing the context in which my constitutional rights were allegedly violated.

Additionally, I propose to further amend the complaint by adding a factual allegation that I informed the former chief that all I was doing was expressing my First Amendment rights in a public place by recording in the public lobby. Despite this, after detaining me the first time, he proceeded to say, "you want a lawsuit, you get a lawsuit," and subsequently arrested me again

after displaying full knowledge that I was just recording the public signs and history.

[ECF No. 36 (errors in original, minor edits made)].[3]

In response, the City has submitted the following undisputed evidence: On September 22, 2023, Plaintiff visited the New Ellenton City Hall to record a video to be placed on his YouTube channel. [ECF No. 54-7 at 0:42].[4]

Plaintiff's video begins with him walking around City Hall, reading the signs posted on the front door, and making general comments. *See id.* Plaintiff circles the entire building, recording. *See id.*

Plaintiff then goes into City Hall, recording signage, pamphlets, and business cards on display, including the following sign—the only sign discussed or seen by Plaintiff regarding cell phone use or recording:

---

[3] In this Circuit, verified complaints filed by pro se plaintiffs can be considered as affidavits when the allegations contained therein are based on personal knowledge. *See, e.g., Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). However, Plaintiff's original complaint and amended complaint in this case are not verified nor has Plaintiff submitted any evidence in support of his claims or in response to the City's motion for summary judgment. [*See* ECF Nos. 1, 36, 39, 60].

[4] The City references another case before this court involving Plaintiff in which the court found as follows:

> Defendants have submitted evidence that Plaintiff holds himself as "First Amendment Protection Agency" or "FAPA," and maintains a YouTube channel under that same name. Medaglia "travel[s] the country doing first amendment audits on municipalities and public buildings." Medaglia derives income from taking videos in public places and quasi-public places such as post offices and then posting them on his YouTube channel.

*Medaglia v. Allendale Police Department*, C/A No. 24-533-MGL-SVH, ECF No. 28 at 3 n.2 (citations omitted).



[ECF No. 54-7 at 5:00, ECF No. 54-5].

Plaintiff is then approached by Middleton, who informs him that he is in a government building and that he cannot record here, asking him to exit the building. [ECF No. 54-7 at 8:20]. Plaintiff refuses to exit, refuses to provide his name, and informs Middleton that he is "in the middle of something . . . recording." *Id.* at 8:55.

Middleton calls in the situation via his radio, stating he is "with a gentlemen who is recording on the inside the building," and then, as Plaintiff moves to go further into the building, the following exchange occurs:

> Middleton:  No Sir. Restricted Area.
> Plaintiff:     Where does it say that? . . . .
> Middleton:  Sir, if you don't mind, please.
> Plaintiff:     No, I do, I do.
> Middleton:  Exit, please.
> Plaintiff:     No, thank you.
> Middleton:  I'm only going to give you one more opportunity.
> Plaintiff:     And then what is going to happen?
> Middleton:  Ok. Exit the building.
> Plaintiff:     No, thank you. Not right now. As soon as I am done.
> Middleton:  Come on, sir.

*Id.* at 9:40.

Middleton then takes hold of Plaintiff's arm, asking Plaintiff repeatedly to exit, with Plaintiff repeatedly stating, "excuse me, please don't touch me." *Id.* at 10:08. Plaintiff then asks, and is provided, Middleton's name and badge number. *Id.* at 10:15. Middleton informs Plaintiff that he is "going to exit [Plaintiff] out of the building," and the two get into a debate as to whether Middleton "assaulted" Plaintiff when he touched him. *Id.* at 10:20.

A conversation ensued, with Middleton asking Plaintiff what his "agenda" is and continuing to try to get Plaintiff to exit the building, with Plaintiff stating he does not have to provide Middleton with the information he is asking about and attempting, again, to move further into the building. *See id.*

Middleton then informs Plaintiff he is under arrest and is trespassing and secures Plaintiff's arms in handcuffs behind his back. *Id.* at 11:25. Plaintiff speaks to the camera, "you guys see this," and tells Middleton "I want you to think about what you are doing." *Id.* at 11:30.

Middleton escorts Plaintiff outside, and Plaintiff informs him that he is not leaving and that he will return inside the building as soon as the handcuffs are removed. *Id.* at 12:10. Middleton removes Plaintiff's handcuffs after roughly one minute of him wearing them, returning inside the building. *Id.* at 12:45.

Plaintiff then informs the camera that "we won guys" and states he will be going back inside, saying "let's see where this goes," adding as follows:

> We won guys. We won. We did it. We got them. And that's unfortunate too. Because I know that guy personally. I really did not think he was going to take it the way he just did. That is very very unfortunate. I just got illegally arrested and detained for expressing my First Amendment in a public building. In a public building.

*Id.* at 12:50.

At this point, Plaintiff attempts to re-enter the building, and Middleton prevents him, blocking the entrance door and placing his palm on Plaintiff's chest. *Id.* at 13:20. As Middleton attempts to shut the door with Plaintiff outside, Plaintiff states repeatedly, "congratulations, you have just earned the State of South Carolina a humungous lawsuit," also stating to the camera

as he tries to pry the door open, "you guys see this, I have to fight this man right now." *Id.* at 13:35. Middleton and Plaintiff continue to argue, with Plaintiff trying to get into the building and Middleton blocking his path with his body asking him to exit the area, eventually resulting in Middleton calling for a deputy to come assist him, and Plaintiff stating, "you are the chief what do you need a deputy for." *Id.* at 14:00.

Plaintiff repeatedly states "my dad is going to love to hear this," as he steps into the building and Middleton blocks his path, and then states calmly "ow, ow, ow, you are hurting me, ow, ow, ow" as Middleton touches him. *Id.* at 15:00. After Middleton repeatedly asks Plaintiff to leave and Plaintiff refuses, he moves to handcuff Plaintiff again, with Plaintiff repeatedly stating, "let's do it again," and Middleton stating, "you want a lawsuit, get a lawsuit." *Id.* at 15:40. The YouTube video ends with the following words on the screen: "First Amendment Protection Agency. Second half of video will be released with Chief's body cam once FOIA request is filled." *Id.* at 16:14.

The City has also submitted Middleton's body-worn camera ("BWC") evidence recording the same event, consistent with the previous YouTube video, from a different angle. [ECF No. 54-2]. However, Middleton's BWC also includes what occurred after the YouTube video ended. *See id.*

Middleton escorts Plaintiff to the back in the building where Plaintiff refuses to sit and makes statements including "it's not going to be good for

you," "say goodbye to your qualified immunity," "I didn't think I would be able to get you with it," and that his dad "will think this whole thing is fucking hilarious." *Id.* at 7:00.[5] In response to Plaintiff's questions, Middleton informs Plaintiff he is being detained for trespassing. *Id.* at 10:00.

Over the course of the next few minutes, Plaintiff continues to tell Middleton that, for example, Middleton is "in trouble," asks for his phone, and it is returned to him, and asks for the handcuffs to be removed, and Middleton declines, informing Plaintiff again that he is detained. *Id.* at 11:00.

Middleton then makes a call, stating as follows:

> I got a question for you. I have a gentleman here. This gentlemen . . . who wants to record and I've told him several times to get out of my building. He's claiming his has a right to come in here and record at the police department . . . . Ok. I'll undetain him and we will go from there.

*Id.* at 12:20. Middleton then removes Plaintiff's handcuffs as Plaintiff celebrates, stating, for example, "you are in so much trouble and I love it," as Middleton continues to discuss the situation on the phone. *Id.* at 13:00.[6]

---

[5] Plaintiff states in briefing without supporting evidence that, at this time, he "fear[ed for his] safety in an unsupervised office with [Middleton.]" [*See* ECF No. 39 at 2]. This allegation does not appear consistent with the recorded evidence.

[6] Throughout the time that Middleton is on the phone, and prior, Plaintiff is speaking to Middleton, repeatedly making statements, for example, "It's sad you don't know your own laws as a chief. You are fucked. You are fucked my friend," that Middleton ignores. [ECF No. 54-2 at 12:50].

When Middleton returned his phone to him, Plaintiff started intermittently recording. *See id.* at 11:00. After Middleton removed his handcuffs, Plaintiff begin recording again while Middleton was still on the phone. *Id.* at 13:20. At one point, Middleton hears Plaintiff curse to the camera and informs him that he cannot curse in this building. *Id.* at 14:20. Plaintiff responds, "I can say whatever the fuck I want to you," Middleton informs his caller "I'm going to detain him Judge and he's arrested," and Middleton handcuffs Plaintiff again, informing him he is under arrest for disorderly conduct. *Id.* at 14:20.

Middleton walks Plaintiff to his car, and Plaintiff appears gleeful, and the following exchange occurs:

> Plaintiff:     Let's go, let's go, let's go, I didn't think today was the day . . . I'm very happy but I'm kinda disappointed . . . I had so much respect for you . . . It's not gone. I love you right now actually.
> Middleton:  Have a seat in the car.
> Plaintiff:     I feel threatened right now . . . . Because none of these are lawful orders so I'm not going to listen . . . . Use force . . . .
> Middleton:  I'm not going to use force.

*Id.* at 15:00. Plaintiff refuses to get in the car, telling Middleton repeatedly to use force in addition to other provocative statements, for example "touch my dick," over the course of the next several minutes. *Id.* at 15:50. Middleton

eventually maneuvers Plaintiff into the car with Plaintiff stating, "I'm so happy right now . . . . let's do it, let's do it." *Id.* at 19:00.[7]

Joshua Solomon ("Solomon"), New Ellenton's current chief of police, has attested as follows:

> I am aware of the allegations in this action. I provide herewith a complete and accurate recording of body camera video from the body camera of former Police Chief Shawn Middleton of an incident on September 22, 2023, as well as in-car dash camera footage from the same date, from the transport of Plaintiff after his arrest, and Middleton's documentation of the incident (Incident Report, Booking Report, Citation, and Probable Cause Affidavit). While it appears Plaintiff was arrested for disorderly conduct, the Incident Report from the event was not fully completed, and the documentation does not state the factual basis for the charge. I have not discussed the matter with Middleton, and do not know his reason for the charge. After I became Interim Chief [on September 29, 2023], I requested that the charge be dismissed, and it was dismissed.

[ECF No. 54-3].

II.    Discussion

A.    Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the

---

[7] The BWC continues through Plaintiff's arrest and booking at the detention center, but it appears that Plaintiff asserts no claims concerning what occurred following his arrest. [*See* ECF Nos. 1, 36, 39, 60].

movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts

12

that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

      B.     Analysis

          1.     Plaintiff's Motion to Reserve the Lawsuit

As a preliminary matter, the court addresses Plaintiff's motion for leave to reserve the lawsuit wherein Plaintiff states as follows:

> At the time of filing, Plaintiff sought guidance from court clerks regarding procedural matters. Unfortunately, the information provided was erroneous, which lead him to serve the paperwork himself [on Middleton] after the confusion . . . .

> Reserving Lawsuit: It is necessary to reserve the lawsuit due to the erroneous information received from court clerks, which misled Plaintiff on procedural matters. This misinformation has impacted Plaintiffs ability to proceed effectively in this litigation.

[ECF No. 53].

Plaintiff's motion is not well-received. This court's guide for pro se parties, entitled, "Information on Representing Yourself in a Civil Action (Non-Prisoner)," revised December 1, 2023, is available https://www.scd.uscourts.gov/navtop/links.asp (last visited September 13, 2024), states in part as follows:

> These instructions are designed to help you understand basic court procedures in civil actions. COURT STAFF CANNOT GIVE YOU LEGAL ADVICE! . . . .

> These instructions do not cover all circumstances or all types of cases. It is your responsibility to comply with the Federal Rules of Civil Procedure (FRCP), the Local Rules of this District, and any statutes and rules that may apply to your particular case . . . .
>
> "Service of process" refers to the procedure of notifying a defendant that a lawsuit has been filed, what it is about, and the time for filing an answer. Service must be accomplished as specified in FRCP Rule 4 and Local Rule 4.01. *A case cannot proceed against a defendant who has not been served!* . . . .
>
> Service may be made by anyone who is at least 18 years old and not a party in the case. There are many private "process servers" who will serve legal papers for a fee.

*Id.* at 5, 11–12, *see also* Fed. Fed. R. Civ. P. 4 (stating in part "summons must be served with a copy of the complaint," that the "plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service" and that service may be made by "[a]ny person who is at least 18 years old and not a party may serve a summons and complaint").

On February 2, 2024, the court in its order authorizing service [ECF No. 5], directed Plaintiff to serve copies of the summons and complaint on each defendant, and stated service of process should be made "under Rule 4 of the Federal Rules of Civil Procedure." It was Plaintiff's responsibility to read the order and the rule and comply with them. *Ballard v. Carlson*, 882 F.2d 93, 96 (4th Cir. 1989) ("Pro se litigants are entitled to some deference from courts . . . . But they as well as other litigants are subject to the time

requirements and respect for court orders without which effective judicial administration would be impossible."). Plaintiff did not comply.

On June 20, 2024, the undersigned issued an order to show cause, informing Plaintiff that he had not filed proof of service that he served Middleton with a copy of the summons and complaint in this case, providing Plaintiff until June 18, 2024, to show good cause for his failure to effect service. [ECF No. 32]. Plaintiff failed to timely respond to this order and, instead, on July 24, 2024, filed the instant motion for leave to reserve the lawsuit.

Although Plaintiff has offered a reason why service was not initially effected, he has offered no explanation why service could not have been perfected on Middleton thereafter. *See e.g., Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 306 (4th Cir. 2016) ("Establishing good cause is the responsibility of the party opposing the motion to dismiss . . . and 'necessitates a demonstration of why service was not made within the time constraints.' ").[8] Courts have declined to give it a concrete definition for good

---

[8] Pursuant to Fed. R. Civ. P. 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the Plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time," but "[i]f Plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* Summons was issued in this case on February 2, 2024. *See Robinson v. Clipse*, 602 F.3d 605, 608–09 (4th Cir. 2010) (tolling during initial review).

cause, preferring to analyze a number of factors which include "whether: 1) the delay in service was outside the plaintiff's control, 2) the defendant was evasive, 3) the plaintiff acted diligently or made reasonable efforts, 4) the plaintiff is pro se or in forma pauperis, 5) the defendant will be prejudiced, or 6) the plaintiff asked for an extension of time under Rule 6(b)(1)(A)." *Id.*

Here, no factor weighs in Plaintiff's favor except that he is proceeding pro se. Additionally, the case has proceeded such that any delay would be prejudicial because both the City and Plaintiff have filed motions for summary judgment that have been briefed. Accordingly, the undersigned recommends the district judge deny Plaintiff's motion for leave to reserve the lawsuit and dismiss claims asserted against Middleton without prejudice. [ECF No 53].

        2.     Motions for Summary Judgment

           a.     First Amendment Claims

To state a plausible claim for relief under 42 U.S.C. § 1983, an aggrieved party must sufficiently allege that he was injured by "the deprivation of any [of his or her] rights, privileges, or immunities secured by the [United States] Constitution and laws" by a "person" acting "under color of state law." *See* 42 U.S.C. § 1983; *see generally* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1230 (3d ed. 2014).

Additionally, a plaintiff must allege a causal connection or affirmative link between the conduct of which he complains and the official sued. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (providing that a plaintiff in a § 1983 action must plead that the defendant, through his own individual actions, violated the constitution); *Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976) (holding a § 1983 plaintiff must show that he suffered a specific injury as a result of specific conduct of a defendant, and an affirmative link between the injury and that conduct). The doctrine of supervisory liability is generally inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom that results in an illegal action. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Fisher v. Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1142–43 (4th Cir. 1982).[9]

As argued by the City, and not addressed by Plaintiff, "Plaintiff can offer no proof of policy or custom sufficient to present liability for [the City]." [ECF No. 54-1 at 11]. Indeed, Plaintiff has offered no evidence in this case to support any allegation he has made or cause of action he has asserted.

---

[9] To the extent that Plaintiff is asserting a claim against the City based on supervisory liability, under 42 U.S.C. § 1983, municipalities are not liable under the theory of respondeat superior for unconstitutional conduct engaged in by their employees. *See Monell*, 436 U.S. at 691; *see also, e.g., Todman v. Mayor & City Council of Baltimore*, No. 23-1201, 2024 WL 2887403, at *11 (4th Cir. June 10, 2024) ("the City can be held liable only for action[s] pursuant to official municipal policy of some nature.") (citation omitted)).

Construing his complaint and briefing liberally, Plaintiff may be arguing there is an official policy or custom to not allow recordings to take place in City Hall. However, again, Plaintiff has offered no evidence in support, and the City has offered undisputed evidence that no such policy or custom exists. As attested by Solomon:

> I have never seen a sign, nor am I aware of any City of New Ellenton policy, ordinance, practice, procedure, or custom, prohibiting recording in City Hall nor prohibiting cell phone use, in general, in City Hall. I have inquired into such matters, and found none. Likewise, there is no such documented policy within the City's Police Department. There is one sign on the service window in the City Hall which says, at the top, "Please, no cell phone while at window. Thank you!" The sign has an image of a cell phone with a bar across it, and, below the image, says, "No cell phones." An image is attached hereto. My understanding of the sign is that it is simply a request for courtesy toward staff and others waiting for service when conducting business at the service window. I have seen no other signage regarding cell phone use, and none restricting recording in City Hall. I have seen no signage outside the City Hall building regarding cell phone use or recording. I do not know why Middleton would say that cell phone use or recording was not allowed. I have never known any person to be arrested for cell phone use or recording within the City Hall or during an encounter involving cell phone use or recording.

[ECF No. 54-3, *see also* ECF No. 54-4 (affidavit from Kenneth Cook, New Ellenton's city administrator, attesting the same), ECF No. 54-6 (affidavit from Maria Tamimi-Bush, New Ellenton's assistant city clerk and police department victim advocate, attesting the same), ECF No. 54-8 (affidavit of Zorayda El, New Ellenton's city clerk and treasurer, attesting the same)].

Official policy is not constituted by "episodic exercises of discretion in the operational details of government." *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987), cert denied sub nom *City of Fayetteville, N.C. v. Spell*, 484 U.S. 1027 (1988). A decision to arrest is not equal to city policy simply by exercise of an employee's discretion, as that would equate to respondeat superior liability. *Prapotnik v. City of St. Louis*, 108 S.Ct. 915 (1988). As stated by the Supreme Court, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

Accordingly, the undersigned recommends the district judge grant the City's Motion for summary judgment as to Plaintiff's First Amendment claims asserted against the City and deny Plaintiff's motion for summary judgment as to the same claims.[10]

---

[10] Given the recommendation above, the court need not address the City's additional argument concerning Plaintiff's First Amendment claims, that "[e]ven if the City had a policy restricting activities such as plaintiff's activities in its City Hall lobby, such would not be in violation of the First Amendment." [ECF No. 54-1 at 13–17 (citing *Heffron v. Int'l. Soc. For Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981) ("[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired.")); *Hulbert v. Pope*, 70 F.4th 726, 736 (4th Cir. 2023) ("Neither this court, nor the Supreme Court, nor any other circuit has recognized an unlimited First Amendment right to

b.    South Carolina False Arrest Claim

Plaintiff's claim against the City for false arrest is barred by the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-70 *et seq.* ("SCTCA"). The SCTCA is "the exclusive remedy for any tort committed by an employee of a governmental entity" acting within the scope of his employment. S.C. Code Ann. § 15-78-70(a). "The State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages, contained" within the SCTCA. S.C. Code Ann. § 15-78-40.

The SCTCA additionally provides a "governmental entity is not liable for the loss resulting from . . . employee conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-60(17); *see also id.* at § 15-78-70(b). "[U]nder the SCTCA, for a given tort, either the governmental entity or the employee is liable but not both." *Newkirk v. Enzor*, 240 F. Supp. 3d 426, 436 (D.S.C. 2017).

---

film police free of otherwise reasonable limitations. In fact, the circuits that recognized a right to film explicitly noted that it may be subject to reasonable time, place, and manner restrictions.") (citations omitted))].

As argued by the City:

[T]his government entity Defendant is immune from suit for Plaintiff's arrest under the SCTCA. To the extent the Plaintiff seeks to impose state law liability on the City for acts or conduct of the City or its officer which constitute "adoption, *enforcement* or compliance with any law or failure to adopt or enforce any law, whether valid or invalid, including, but not limited to, any charter, provision, ordinance, resolution, rule, regulation, or written policy," or the institution or prosecution of any judicial proceeding, the City is immune from liability for state law claims under South Carolina Code §15-78-60(4) and §15-78-60(23). Likewise, to the extent the Plaintiff seeks to impose liability on the City for conduct of its officer which constituted "the exercise of discretion or judgment by the governmental . . . employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental . . . employee," the City is immune from liability under South Carolina Code §15-78-60(5). The City is further immune from liability for the method by which is provides police protection. South Carolina Code §15-78-60(6).

[ECF No. 54-1 at 26–27].

Plaintiff does not dispute that Middleton was acting within the scope of his employment when he detained and arrested Plaintiff [*see, e.g.,* ECF Nos. 23 at 2, 39 at 1], nor does he argue that any of these SCTCA immunities should not apply. Indeed, Plaintiff does not address the City's immunity arguments at all.

Accordingly, the undersigned recommends the district judge grant the City's motion for summary judgment as to Plaintiff's false arrest claims asserted against the City and deny Plaintiff's motion for summary judgment as to the same claims, particularly where, here, Plaintiff has failed to

articulate what claims he is bringing against the City and on what basis those claims are asserted, failed to offer any evidence, and failed to address any arguments made by the City. [*See* ECF Nos. 1, 36, 39, 60].[11]

## III.    Conclusion and Recommendation

For reasons previously articulated in the R&R, the undersigned recommends the district judge grant the City's motion to dismiss the amended complaint in part, dismissing Plaintiff's claims against the City for violation of his Fourth Amendment rights, for intentional infliction of emotional distress under South Carolina law, and for violation of S.C. Code Ann. § 16-3-910. [ECF No. 41].

For the foregoing reasons, the undersigned also recommends the district judge grant the City's motion for summary judgment [ECF No. 54],

---

[11] Given the recommendation above, the court need not address the City's additional argument, related to Plaintiff's false arrest claim, that "Plaintiff's Fourth Amendment claim fails because there was probable cause to arrest him for multiple offenses," including disorderly conduct, assault in the third degree, threatening a public official, common law breach of peace, and resisting arrest. [ECF No. 54-1 at 17, 20–26 (citing *Engwer v. Sims*, C/A No. 3:06-2271-CMC, 2007 WL 1864064, at *3 (D.S.C. June 26, 2007) ("An arrest is valid if based on the facts known to the officer, objective probable cause exists as to *any* crime.") (citations omitted, emphasis in original)); *In re Jeremiah W.*, 606 S.E.2d 766, 768 (S.C. 2004) ("There is a strong policy reason forholding that a new and distinct crime, even if triggered by an illegal stop, is a sufficient intervening event to provide independent grounds for arrest.") (citations omitted))].

deny Plaintiff's motions for summary judgment [ECF No. 39, 60], and deny

Plaintiff's motion for leave to reserve the lawsuit [ECF No. 53].[12]

     IT IS SO RECOMMENDED.

September 16, 2024
Columbia, South Carolina

         Shiva V. Hodges
         United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[12] Given the recommendation above, the court need not address the City's additional arguments concerning claims the undersigned has previously recommended be dismissed or concerning punitive damages.

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).